UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRUCE H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

1:21-CV-00596-LJV
DECISION & ORDER

On May 7, 2021, the plaintiff, Bruce H. ("Bruce"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On March 29, 2022, Bruce moved for judgment on the pleadings, Docket Item 5, and on May 25, 2022, the Commissioner responded and cross-moved for judgment on the pleadings. Docket Item 6. Bruce did not reply.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Bruce applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, the Court grants Bruce's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  That includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.    THE ALJ'S DECISION**

On October 29, 2020, the ALJ found that Bruce had not been under a disability since his alleged disability onset date of April 23, 2013.  *See* Docket Item 4 at 16-26. The ALJ based that decision on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.*

At step one, the ALJ found that Bruce met the insured status requirements of the Act through December 31, 2020, and that Bruce had not engaged in substantial gainful activity since April 23, 2013.  *Id.* at 18.

At step two, the ALJ found that Bruce suffered from five severe, medically determinable impairments: "cervical disc herniations status post fusion with mild cervical spondylosis; lumbar disc disease; history of left shoulder tendonitis/impingement syndrome with partial rotator cuff tear; left knee chondromalacia with arthroscopy; [and] right cubital tunnel syndrome with release surgery in 2014."  *See id.* at 18-19.

At step three, the ALJ found that Bruce's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 19-20.  More specifically, the ALJ found

3

that Bruce's impairments did not meet or medically equal listing 1.02 (major, dysfunction of a joint due to any cause) or listing 1.04 (disorders of the spine). *Id.* at 20.

The ALJ then found that Bruce had the residual functional capacity ("RFC")[4] to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that:

> [Bruce] can lift and carry 10 pounds occasionally and five pounds frequently. He can sit for six hours in eight hours and stand/walk for two hours in eight hours. He can occasionally climb stairs or ramps but never climb ladders, ramps[,] or scaffolds. He can occasionally balance, stoop, kneel, and crouch but never crawl. He can frequently reach bilaterally and occasionally reach overhead bilaterally. He must use a [handheld] assistive device for walking over uneven terrain or for prolonged ambulation. He should have no exposure to excessive cold, vibration, or hazards such as unprotected heights and moving machinery.

*Id.* at 20.

Based on that RFC, the ALJ found at step four that Bruce could perform past relevant work as a service order clerk, collections clerk, or survey worker. *Id.* at 24; *see Dictionary of Occupational Titles* 221.367-070, 1991 WL 672023 (Jan. 1, 2016); *id.* at 241.357-010, 1991 WL 672249; *id.* at 205.367-054, 1991 WL 671725. The ALJ reasoned that those jobs would "not require the performance of work-related activities precluded by [Bruce's RFC]." Docket Item 4 at 24. Therefore, the ALJ found that Bruce had not been under a disability, or entitled to SSI or DIB, between April 23, 2013, and October 29, 2020. *See id.* at 26.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.   ALLEGATIONS

Bruce argues that the ALJ erred by improperly assessing the opinion of a consultative examiner, John Schwab, D.O.  *See* Docket Item 5-1 at 13-15.  More specifically, Bruce argues that the ALJ relied on his own lay opinion to reject Dr. Schwab's finding that Bruce had a marked limitation in moving his head in any direction.  *See id.*  This Court agrees that the ALJ erred and, because that error was to Bruce's prejudice, remands the matter to the Commissioner.

## III.   ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order).  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

For claims filed on or after March 27, 2017, such as Bruce's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or] she finds the medical opinions in the case record." *Angela H.-M.*, 631 F. Supp. 3d at 7.

The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors "that tend to support or contradict" the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ is always required to "explain how [he or] she considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to, explain how [he or] she considered the [remaining] factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability" and "consistency" are terms of art defined by the regulations. As to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.*

6

§§ 404.1520c(c)(1), 416.920c(c)(1); *see Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024) (summary order) (characterizing "supportability" as "how well supported an opinion is by medical evidence and the explanations given in the opinion"). As to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2); *see Spottswood*, 2024 WL 89635, at *1 (characterizing "consistency" as "how consistent an opinion is with other evidence in the record").

On July 8, 2019, Dr. Schwab examined Bruce and opined, among other things, that Bruce had "a marked [limitation for] moving his head in any direction." *See* Docket Item 4 at 1266. The ALJ found that part of Dr. Schwab's opinion "not persuasive." *See id.* at 24. More specifically, the ALJ determined that a "marked" limitation was unsupported by Dr. Schwab's own examination, which showed that Bruce had: (1) "full flexion and extension of [his] cervical spine"; (2) "only mildly reduced lateral flexion"; and (3) "low-normal rotary flexion." *Id.* That may or may not have been adequate to address one of that factors that the ALJ was required to address: supportability.[5] But

---

[5] It seems intuitively correct to say that someone with normal cervical flexion and extension, mildly reduced lateral flexion, and low to normal rotary flexion can move his head in any direction. But neither the ALJ nor this Court are physicians, so what we understand by those technical findings may not be entirely correct. Stated another way, Dr. Schwab may have meant something different than what a layperson understands with his various findings about cervical flexion and extension. But this Court need not, and does not decide that issue here because even if the ALJ adequately addressed supportability, he clearly did not adequately address consistency.

even if it was, the ALJ clearly erred in addressing the other factor he was required to address: consistency.

In this regard, the ALJ found that a marked limitation was inconsistent with "the medical evidence of record at Exhibit B-12F, p.2," as well as Bruce's testimony that he can drive.  *See id.*  The evidence cited by the ALJ—Exhibit B-12F—is a single treatment note, dated June 14, 2019, from Millard Fillmore Suburban Hospital's emergency department stating that Bruce had a full range of motion in his neck following a motor vehicle accident.  *See id.* at 1282-84.  Bruce argues that in relying on that one piece of evidence, "the ALJ ignored a large portion of the medical record which indicated pain and [a] limit[ed] range of motion in [his] neck/cervical spine."  *See* Docket Item 5-1 at 14.

Bruce is correct.  The record indicates that after he suffered a cervical spine injury in April 2015, Bruce went to the Kenmore Mercy Hospital emergency room complaining of neck pain and bilateral weakness in the arms.  Docket Item 4 at 405-06.  Several years later, Bruce's cervical spine problems then appeared to worsen after a motor vehicle accident in June 2019, and he established care with General Physician PC.  *See id.* at 1346-61.  After that accident—and after the June 2019 note indicating a full range of motion noted above, *see id.* at 1282-84—Bruce's providers consistently observed that he had a decreased range of motion in his cervical spine*, see, e.g., id.* at 1350, 1356, 1359 (notes from December 2019, February 2020, and March 2020).  So while Bruce may have been able to move his neck freely when he visited the emergency room right after the accident, it appears that his condition worsened as time went on.

Indeed, six months after the accident, on December 9, 2019, Luke Martinic, PA, stated that Bruce had "noticed a significant regression in his overall condition due to lack of treatment for his cervical spine throughout the last 2 months." *Id.* at 1351. PA Martinic "request[ed] authorization for additional physical therapy to the cervical spine," but Bruce's insurance carrier denied that request. *See id.* at 1351, 1355. For that reason, Bruce asked that his status be changed from "total disability" to "moderate-to-marked disability" so that he could at least try to find work. *See id.* at 1360-61.

In light of that evidence, the ALJ's analysis of the consistency of Dr. Schwab's opinion with the rest of the medical record was wholly inadequate under the regulations. Dr. Schwab was the only acceptable medical source to examine Bruce, *see* 20 C.F.R. §§ 404.1502(a)(1), 416.902(a)(1), and provide a medical opinion regarding Bruce's physical impairments, *see id.* §§ 404.1513(a)(2), 416.913(a)(2). But the ALJ found Dr. Schwab's opinion about a marked limitation to be inconsistent with the rest of the record based on only one piece of medical evidence and Bruce's self-reported ability to drive, despite the fact that several subsequent medical exams were indeed consistent with Dr. Schwab's findings. That sort of cherry-picking requires remand. *See, e.g., Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. 2022) (summary order) (finding ALJ's improper articulation of supportability and consistency factors harmful error requiring remand where ALJ "selectively relied on portions of the record that showed improvement")

In sum, remand is necessary for the ALJ to provide a more robust analysis of the consistency of Dr. Schwab's opinion with the rest of the medical record, as well as to

9

explain how the restrictions in the RFC adequately address Bruce's limitations caused by his cervical spine.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 6, is DENIED, and Bruce's motion for judgment on the pleadings, Docket Item 5, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: April 22, 2024
Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE